## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ISAAC E. HEAVEN,** | ) | |
| **ROGER L. MARTIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-823-R** |
| | ) | |
| **SKINNER TANK COMPANY, an** | ) | |
| **Oklahoma Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is Defendant Skinner Tank Company's motion for summary judgment on Plaintiff Isaac E. Heaven's Complaint for race discrimination and a racially hostile work environment. Defendant generally asserts that the undisputed facts, most of which come directly from Plaintiff's testimony, demonstrate that Plaintiff Heaven was a violent, disrespectful employee whose employment ended because he physically punched his supervisor in the face and that Defendant is entitled to judgment as a matter of law on both of Plaintiff's claims. The following facts are undisputed.

Plaintiff Isaac Heaven started working for Defendant Skinner Tank in January of 2015 as a welder/helper. Skinner Tank builds above ground steel storage tanks which can contain fertilizer, asphalt, bio diesel and other materials. Dan Jones was Mr. Heaven's supervisor the entire time he worked at Skinner Tank. Dan Jones is a 29 year employee of Skinner Tank. Dan Jones' immediate supervisors were Kent Brooks, Executive Vice President; Larry Skinner, owner/President; Brad Skinner, Vice President and Director of

Safety; and Ron Alexander, Field Supervisor. Emery Lincoln, an African-American male, has worked under Mr. Jones for nine years on the same crew as Mr. Heaven. Plaintiff Roger Martin is Mr. Heaven's cousin. Mr. Martin has worked for Mr. Jones since 2007.

In June of 2015, Mr. Heaven was working on Mr. Jones' crew building a tank for fertilizer in Iowa. Mr. Heaven testified that he got along with everyone he worked with in Iowa. Plaintiff testified that Dan Jones came to work drunk on June 12, 2015. Plaintiff Heaven was assigned to work at the bottom of the tank to clean the mud off the sheets of metal before sending the sheets to the top of the structure to be welded. It was raining that day and had been the last two days. All of the other crew members were on the top of the tank putting the roof together. Mr. Jones had personally trained Plaintiff Heaven to clean the sheets of metal. If the sheets are not swept clean, the welders are at risk for getting shocked by moisture on the sheets. Mr. Jones was working on the top of the tank thirty-two feet above Plaintiff Heaven. Mr. Jones gave Plaintiff Heaven several warnings to improve his performance because he was not thoroughly sweeping the sheets clean. Plaintiff Heaven testified that Jones became upset with him because the sheets of metal were coming up muddy and claims that Jones repeatedly called him "boy" and told him that he "was not going to be paid shit." Mr. Heaven testified that he tried "to get as much mud and dirt off" as he could but that in his opinion it was "an impossible task" in a "muddy construction site." Thereafter, Mr. Heaven testified that he "went up to the top of the tank and confronted him [Mr. Jones] about his actions." He testified that he told Mr.

Jones he had four kids and was busting his ass out here and "[t]his is how you want to talk to me?" Then, he claims Jones bumped him with his body and Heaven punched Jones in the jaw. They continued to fight until Roger Martin broke it up. After Mr. Martin helped subdue Mr. Heaven, Mr. Jones told Heaven "you put your hands on me . . . it's over" to which Mr. Heaven responded "I'm quitting this shit hole anyway." At that point Heaven believed he no longer had a job. Horseplay and fighting is prohibited on job sites according to Skinner Tank's safety rules; however, Heaven also testified that at the end of the discussion between Jones and Heaven, Jones tried to fight him, ripping the back of his shirt. Thereafter, Mr. Heaven went back to his hotel room and everyone else went back to work until their break. After lunch, Mr. Jones went to Plaintiff Heaven's hotel and tried to discuss the situation with Mr. Heaven, extending his hand in good faith to let bygones be bygones but when Plaintiff refused to shake Jones' hand, Jones said "I tried. You're fired." Plaintiff Heaven testified that "that must have made me mad again" so they went outside to talk. Jones did not use any racial slurs during this conversation, according to Heaven; however, he testified that Jones fired him during this conversation because the men were unable to resolve the situation. Roger Martin testified that fights went on all the time between other men at the worksite and those employees were not usually terminated. After Jones' conversation with Heaven, Mr. Heaven claims that through his hotel window he heard Mr. Jones using the N-word as he drove through the parking lot. Mr. Jones then decided to quit his employment with Skinner Tank, leaving the project site around 1:00 p.m. on June 12, 2015 and heading home. Mr. Jones told Mr. Lincoln that he was

3

quitting his job prior to leaving the worksite and shortly after leaving the worksite he notified his supervisor, Ron Alexander, that he was quitting. Jones left a voicemail on Plaintiff Martin's phone in which he referred to Plaintiff Heaven and his cousin Mr. Martin as "two dumb ghetto ass niggers." Plaintiff Heaven testified that June 12, 2015 was the only day he ever heard Jones use "racial terminology and things of that nature" and that he didn't have any problem with Mr. Jones until that day. Mr. Heaven also testified that he never reported Mr. Jones' alleged use of racial slurs to either Brad or Larry Skinner because he didn't have to. Plaintiff Martin testified that he and Mr. Heaven used the word NIGGA amongst each other and toward Mr. Lincoln. Mr. Lincoln testified that Mr. Heaven called him a "house nigger" on June 12, 2015 but that he had never heard Mr. Jones to use terms like "boy" or the N-word. Mr. Jones was rehired by Skinner Tank several months later.

Based on the foregoing undisputed facts, Defendant asserts that Plaintiff cannot establish a *prima facie* case of employment discrimination because he cannot show that he was satisfactorily performing his job. In any event, Defendant argues, Mr. Heaven was terminated for a legitimate, non-discriminatory reason – work place violence, and there is no evidence of pretext. However, a defendant's evidence regarding an employee's work performance is not to be considered in determining whether the employee has made a *prima facie* case of employment discrimination. *Ellison v. Sandia National Laboratories,* 60 Fed. Appx. 203, 205 (10th Cir. 2003), *citing Macdonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119-20 (10th Cir. 1991). The Court will assume that

Plaintiff can establish the second element of a *prima facie* case, both by at least the evidence that he was qualified for his job by virtue of the amount of time he had worked for Skinner Tank and by evidence in the record that he was a good employee and had received at least two raises, indicating his satisfactory performance. However, Defendant has proffered a legitimate nondiscriminatory reason for Plaintiff Heaven's termination – his punching his supervisor in the jaw.

Plaintiff argues that he was terminated from his employment under circumstances giving rise to an inference of discriminatory termination because he was not terminated until an employee of Defendant left a vulgar voicemail message. Although Plaintiff's employment was terminated sometime between noon and one o'clock and Jones quit his employment at approximately 1:00 p.m., Jones' voicemail at 2:49 p.m., the same day, is arguably evidence of Jones' state of mind at the time he fired the Plaintiff. It may reasonably be inferred retroactively that Plaintiff's termination was based on his race.

Defendant has proffered a legitimate non-discriminatory reason for terminating the Plaintiff – his fighting on the job, contrary to the Defendant's safety rules. However, Plaintiff has submitted some evidence of pretext in the form of testimony that fighting on the job was not uncommon and that fighting did not usually result in termination.

Plaintiff also argues that he was constructively discharged because "Plaintiff Heaven felt that being called the vulgarities in the voicemail by a person who he believed to be a supervisor that any reasonable person including Plaintiff Heaven would either felt he was not employed or forced to resign." Plaintiff's Brief at p. 8. However, the

evidence is that Plaintiff's employment was terminated well before he received the voicemail from his ex-supervisor.   There is no evidence that Plaintiff was constructively discharged.

Defendant also argues that it is entitled to summary judgment on Plaintiff Heaven's claim for a racially hostile work environment because Plaintiff cannot establish the last three elements of a *prima facie* case, that is that the harassment was based on race, was sufficiently severe or pervasive to create an abusive working environment and some basis for imputing liability to Defendant, *citing Jones v. Wichita State University*, 528 F.Supp.2d 1196, 1214 (D. Kan. 2007).   However, the Court finds that use of the term "boy" when addressing an Afro-American man, which Plaintiff alleged Jones called him several times, is racial harassment.   But the record in this case does not show that the alleged harassment was sufficiently severe or pervasive to create an abusive working environment.   In that regard, a few isolated incidents of racial enmity are not sufficient.   *See Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).   Rather than sporadic racial slurs, a plaintiff must show a steady barrage of opprobrious racial comments to establish a hostile work environment.   *Id.*   Aside from Jones calling Heaven "boy" he claims he overheard Jones using the N-word as he drove through the parking lot but that conduct occurred after Plaintiff Heaven had been terminated and after Jones had voluntarily left his employment with Skinner Tank.   Likewise, Plaintiff points to the voicemail racial slurs but those occurred after Plaintiff had already been terminated and Jones had quit.   Reasonable jurors could not find that the racial harassment complained of was sufficiently severe or

pervasive to create an abusive working environment. This is particularly true given that Plaintiff himself and other African-American co-workers called each other "nigger," even though the Court recognizes that that term does not carry the same opprobrium when used between African-Americans that it does when a caucasion calls an African-American by that term. Defendant is entitled to summary judgment on Plaintiff's racially hostile work environment claim.

Plaintiff argues that he has stated a claim for the tort of outrage which Defendant did not even address. The Court does not read Plaintiff's Complaint as stating a claim for intentional infliction of emotional distress, also known as the tort of outrage. But even assuming that Plaintiff has pled such a claim, the claim fails as a matter of law. Calling an Afro-American man "boy" several times is not conduct "so extreme and outrageous as to go beyond all possible bounds of decency" and which would be considered "atrocious and utterly intolerable in a civilized society," *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986). Other conduct of Dan Jones while he was driving through the parking lot and in the voicemail left for Plaintiff Heaven cannot be considered in determining whether Plaintiff has a claim for the tort of outrage because it occurred after Jones had quit his job (the voicemail), Skinner Tank, not Dan Jones being the Defendant, or was not directed at the Plaintiff (use of the N-word as Dan Jones drive through the parking lot).

In accordance with the foregoing, Defendant's motion for summary judgment on Plaintiff's § 1981 claim for discriminatory termination is DENIED and in all other respects Defendant's motion is GRANTED.

IT IS SO ORDERED this 8th day of March, 2016.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE